## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary**, | ) ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge: |
| vs. | ) | |
| | ) | |
| **SUN LIFE ASSURANCE COMPANY OF CANADA,** | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Wells Fargo Bank, National Association ("Wells Fargo"), in its capacity as securities intermediary ("Plaintiff" or "Securities Intermediary")[1], by and through its undersigned counsel, for its complaint against Sun Life Assurance Company of Canada ("Sun Life"), hereby alleges as follows:

## NATURE OF THE CASE

1.      Securities Intermediary brings this action for a declaration as to the validity of two Sun Life insurance policies insuring the life of Vera Greenwald (the "Greenwald Policies" or the "Policies"). Securities Intermediary is the legal owner of the Greenwald Policies, having acquired the Policies through a life settlement transaction, where the owner of a life policy uses its assignment, change of ownership, and/or change of beneficiary clauses to transfer ownership of the asset for its market value, created by, among other things, prior premium payments. At the time of that life settlement transaction, the Policies had been in effect during Ms. Greenwald's

---

[1] Wells Fargo acts solely as Securities Intermediary for the beneficial owner of the life insurance policies at issue in this case, not in its individual capacity. *See U.C.C. § 8-102(a)(14)(ii)*

lifetime for more than two years and thus had become incontestable due to the expiration of the Policies' two-year contestability periods.  To retain the value of the Policies and to prevent them from lapsing, Securities Intermediary has made, and must continue to make, substantial monthly premium payments on the Policies for as long as Ms. Greenwald remains alive.

2.      Sun Life has verified Ms. Greenwald's coverage under the Policies, expressly approved the subsequent change of ownership and beneficiary of the Policies to Securities Intermediary, and accepted premiums on the policies for well over a decade since the Policies became incontestable, inducing Securities Intermediary (and the beneficial owner of the Policies) to continue to meet its premium paying obligations under the contracts in order to keep them in force until the filing and payment of a death claim or until the beneficial owner can sell the Policies for a profit in the legal, beneficial, and active market for such transactions.

3.      Sun Life's established conduct with respect to its policies with characteristics similar to the Policies has impaired the value of these assets and called into question their incontestability.  Sun Life has a pattern and practice of accepting premium payments for years (or decades) and then declaring the policies null and void and refusing to return any premiums when the Insured dies.[2]  Because of Sun Life's conduct, when recent attempts were made to sell the Policies as valuable assets, prospective buyers declined to purchase them outright.  Instead, they expressed that they had concluded that upon considering Sun Life's history of collecting premiums and then refusing to pay claims on similar policies, they were not interested in purchasing them, or were only interested in discussing a transaction whereby the beneficial owner of the Policies would retain the financial risk of Sun Life challenging the validity of the Policies at a later date—

---

[2] The dozens of cases where Sun Life has sought to invalidate life policies, based on purported lack of insurable interest, and avoid paying death benefits include *Sun Life Assurance Company of Canada v. Wells Fargo Bank, NA, as Securities Intermediary*, D.N.J, Case 14-cv-5789, 2016 WL 5746352; *Sun Life Assurance Company of Canada v. Wells Fargo Bank, NA, as Securities Intermediary*, D.N.J., Case 17-cv-2679.

2

highly unusual positions that rendered the Policies effectively unalienable and thus badly impaired. *See St. John v. American Mutual*, 13 N.Y. 31 (1855) ("It has been said, that without the right to assign, insurances on lives lose half their usefulness.  (1 Bell's Commentaries, 545.)."); *Grigsby v. Russell*, 222 U.S. 149 (1911) ([I]t is desirable to give to life policies the ordinary characteristics of property….To deny the right to sell…is to diminish appreciably the value of the contract in the owner's hands.").

4.      The resale market's rejection of the Policies as assets is rooted in Sun Life's extraordinary litigation history involving large face amount universal life policies that have been subject to sales and changes in ownership, including jury findings regarding Sun Life's practice of continuing to collect premiums while giving all the indicia of a valid policy and then challenging the validity of these incontestable Policies upon the filing of a death claim that is the essence of Sun Life's obligation under the contract.

5.      Accordingly, to protect its own interests and those of the ultimate beneficiary of the Policies, Securities Intermediary needs immediate declaratory relief to establish the validity and incontestability of the Policies.  Otherwise, Securities Intermediary will continue to be forced to pay years of additional premiums on the Policies only to have Sun Life, as it typically does with respect to contracts sharing similar characteristics with the Policies, subsequently disavow the Policies as invalid—and attempt to keep all premiums received by the carrier in support of the Policies.

6.      In the alternative, should this Court deny Securities Intermediary's requested relief and declare the Policies invalid, Sun Life—because its communications and conduct induced the acquisition of the Policies and payment of premiums, despite Sun Life ultimately intending to disavow the Policies—should be ordered (1) to pay Securities Intermediary all amounts that were

expended to acquire the Policies and to maintain premiums on the Policies or (2) at a minimum, to pay Securities Intermediary the total premiums that Sun Life has received to support the Policies.

## PARTIES

7.      Wells Fargo is a national banking association with its main office in Sioux Falls, South Dakota.  Pursuant to an Amended and Restated Securities Account Control and Custodian Agreement, Securities Intermediary maintains a securities account to which it has credited the Policies for a beneficial owner of the Policies.  As Securities Intermediary, Wells Fargo is "a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." U.C.C. § 8-102(a)(14)(ii).  Each of the Policies constitutes a "Financial Asset" that Securities Intermediary has credited to the securities account. The beneficial owner is an "entitlement holder" who can exercise the rights with respect to each Financial Asset, in this case the Policies, credited to the securities account, and who has authorized and directed Securities Intermediary to file this lawsuit.  Securities Intermediary is identified as the owner and beneficiary of the Policies on the records of Sun Life.

8.      Sun Life is a Canadian life insurance company and a citizen of the Commonwealth of Massachusetts with its principal place of business at One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481.  Sun Life is authorized to do business in the Commonwealth of Massachusetts and conducts business within this judicial district.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction in this case pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Securities Intermediary and Sun Life, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a), (b)(1) and (c)(2) because Sun Life is a citizen of the Commonwealth of Massachusetts, has its U.S. headquarters in this district, transacts business in this district and is subject to personal jurisdiction in this judicial district.

11.     This Court has personal jurisdiction over Sun Life, because Sun Life is a citizen of the Commonwealth of Massachusetts, has its U.S. headquarters in this district and has engaged in business activities within this judicial district.

## FACTUAL ALLEGATIONS

### The Policies

12.     On or about April 3, 2006, a trust formed by Ms. Greenwald, a resident of Brooklyn, New York, applied to Sun Life for two $5,000,000 "Sun Universal Protector PLUS" policies.

13.     Ms. Greenwald designated the Vera Greenwald Irrevocable Life Insurance Trust dated February 1, 2006 (the "Greenwald ILIT"), as the prospective Owner of the policies.  (A true and correct copy of the Declaration of Trust for the Greenwald ILIT is attached as Exhibit 1.)  The Greenwald ILIT was a New York trust governed under New York law.  The trustee of the Greenwald ILIT, David Gottlieb, was, on information and belief, a resident of Brooklyn, New York, and the Greenwald ILIT identified his Brooklyn address as that of the trustee.  The sole beneficiary of the Greenwald ILIT was David Greenwald, son of Ms. Greenwald; David Greenwald, upon information and belief, also was a resident of Brooklyn, New York.

14.     The medical report on Ms. Greenwald ("Part II of Application for Life Insurance"), that had the purpose of assessing her risk as an insured and that was submitted to Sun Life, was conducted by a medical examiner assigned by Sun Life in Brooklyn, New York.

15.     On August 8, 2006, Sun Life issued the Policies—Policy No. xxxx3424 for $5,000,000 and Policy No. xxxxx8676 for $5,000,000.  (True and correct copies of the Policies are attached as Exhibits 2 and 3.)  The "Certificate Specifications" on each of the Policies identified the policy owner as the Greenwald ILIT.

16.     On information and belief, the Greenwald ILIT paid the initial premiums on the Policies and several years of subsequent premiums on the Policies.

**The Policies Are Life Settled and Kept in Good Standing**

17.     On or about June 3, 2009, David Gottlieb, as trustee of the Greenwald ILIT, executed a Life Settlement Application, a Life Settlement Agreement, and various associated disclosures and documents to enter into a life settlement transaction transferring ownership of the Policies pursuant to the property rights created by the Policies' assignment, change of ownership, and/or change of beneficiary clauses.

18.     In furtherance of the life settlement transaction, on or about June 8, 2009, Sun Life provided Verifications of Coverage for each of the Policies, verifying, among other things, that the owner of each Policy was the Vera Greenwald ILIT, that the owner address was the Brooklyn, New York, address of trustee David Gottlieb and that the policies were in force, beyond the contestability period, and had never lapsed.

19.     On or about, July 7, 2009, the parties to the life settlement transaction executed Sun Life "Ownership Change Requests," requesting the changing of the owner of the Policy from the Greenwald ILIT to Wells Fargo, as Securities Intermediary.  The following day, the parties to the life settlement transaction executed Sun Life "Beneficiary Change Requests," requesting the changing of the beneficiary of the Policy from the Greenwald ILIT to Wells Fargo, as securities intermediary.

20.     Sun Life's records confirmed Securities Intermediary's status as owner and beneficiary of each of the Policies on July 8, 2009.  These confirmations in Sun Life's records evidence that Sun Life expressly approved Securities Intermediary's acquisition of the Policies, because Sun Life's "Ownership Change Request" form and "Beneficiary Change Request" form provide that "the requested changes will not become effective until the form has been received and approved" by Sun Life.

21.     The Policies have been kept in good standing since their inception fifteen years ago. To date, Sun Life has received $4,320,867 in premium payments on the Policies.

**Sun Life's Pattern of Conduct, Including Challenging the Validity of Contracts Like the Policies, Impairs the Policies' Value and Their Incontestability**

22.     In recent years, Sun Life has engaged in a policy and practice of collecting millions of dollars in premium payments on policies that Sun Life intends to challenge—and, in fact, has challenged—as void, once a claim for benefits is submitted.  On information and belief, Sun Life identifies policies that it believes to lack an insurable interest (i.e., "Stranger-Originated Life Insurance" or "STOLI"), but conceals such determinations, so as to induce the owners of those policies to pay the maximum number of premiums before Sun Life disavows the policies when the insureds die and death claims are made.

23.     Sun Life's reputation for and history of challenging the validity of dozens of its policies has diminished the value and the marketability of these large universal life Policies in the secondary market for life insurance policies, which has lost confidence in Sun Life policies.  The Policies share characteristics with policies that Sun Life, and/or its regular outside counsel, routinely challenge as invalid upon the filing of a death claim, after millions of dollars of premium payments.  Indeed, that is why attempts to sell the Policies have been unsuccessful:  When prospective buyers noted that the Policies had been issued by Sun Life, they said that, as a result,

they either were not interested in the Policies or they demanded that the beneficial owner of the Policies retain the financial risk of Sun Life challenging the validity of the Policies at a later date.

24.     These highly unusual refusals to consider the purchase of valuable assets in an active market for such assets was rooted in Sun Life's litigation war, against investor-owned, incontestable, large face amount universal life policies, and its well-developed practice of treating policies as if they are valid, collecting substantial amounts of premium payments from investors after doing so, and then repeatedly challenging the policies' validity when it is time for Sun Life to perform on its contracts. *See Sun Life Ass. Co. of Canada v. U.S. Bank Nat'l Assn.*, Case No. 17-cv-75 (D. Del.) (D.E. 251) (Memorandum Opinion) at 4 ("[T]he Court concludes that a reasonable factfinder could find that Sun Life engaged in an unfair and/or deceptive act in connection with its handling of this Policy. These conclusions arise from the Court's determination that, based on all the circumstances of the case, a reasonable jury could find that Sun Life unfairly, unethically, and unscrupulously misrepresented the state of the Policy to induce U.S. Bank . . . to continue making hundreds of thousands of dollars in premium payments, when, in fact (as a reasonable jury could find) Sun Life had already determined that it would not honor the Policy."); *Sun Life Ass. Co. of Canada v. U.S. Bank Nat'l Assn.*, Case No. 17-cv-75 (D. Del.) (D.E. 272) at 2 (jury verdict against Sun Life on promissory estoppel); *Sun Life Ass. Co. of Canada v. U.S. Bank Nat'l Assn.*, Case No. 17-cv-75 (D. Del.) (D.E. 296) (Memorandum Order) at 3-4  ("[T]he Court continues to reject Sun Life's contentions that no reasonable juror could find (by clear and convincing evidence) that Sun Life made a promise or that FCI reasonably relied on that promise….The jury had ample evidence from which it could have reasonably found that Sun Life's promise to pay, if premiums continued to be paid, to have been reasonably certain and definite.").

25.     Despite the diminishment of value and marketability of the Policies caused by Sun Life, Securities Intermediary nonetheless continues to pay combined premiums on the Policies, currently approximately $480,000 annually.  Failure to pay these premiums would result, of course, in the Policies lapsing and the entire value of the Policies being lost.

26.     Given Sun Life's pattern and practice of challenging incontestable policies upon filing of a death claim, Securities Intermediary (and the beneficial owner of the Policies) faces a significant and costly dilemma of carrying a heavy premium load to keep the Policies current, as the Policies have been kept current for the thirteen years since the expiration of the Policies' two-year contestability periods, having Sun Life accept the premium and provide reports on the policies as if they were valid, and then challenge their validity for purported  lack of insurable interest when the recorded beneficiaries submit a death claim. It seeks to resolve that dilemma by praying for a judicial determination that the policies are valid, incontestable, and cannot be challenged based on insurable interest or lack thereof.

## COUNT ONE

### (Declaratory Judgment Regarding the Validity of the Policies)

27.     Securities Intermediary repeats and re-alleges the allegations contained in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28.     There exists an actual, justiciable controversy between the parties as to the validity of the Policies.

29.     Securities Intermediary asserts that it is the sole and rightful legal owner of the Policies, that the Policies are valid and that the validity of the Policies and Sun Life's obligations to pay any ultimate death benefit cannot be challenged on the basis of any events or actions that have transpired to date, including, but not limited to, the procurement of the Policies or Securities Intermediary's acquisition of the Policies.

30.     Because the Policies have been in effect during Ms. Greenwald's lifetime for more than two years, the Policies are incontestable.  Prior to the Policies becoming incontestable, Sun Life had a full opportunity to conduct an investigation of the Policies, including the procurement of the Policies and/or Securities Intermediary's acquisition of the Policies.

31.     Should Sun Life take the incorrect position that these Policies can be challenged thirteen or more years after becoming incontestable, any and all information that Sun Life would need to investigate the procurement of the Policies and/or Securities Intermediary's acquisition of the Policies is presently known to, or can be ascertained by, Sun Life and would be better sought now, while the insured is alive and able to provide information, than after the insured's death and the filing of a claim.

32.     Despite the fact that the Policies are incontestable, Sun Life has a pattern and practice of treating similar policies as if they are valid while allowing the owners to discharge their contractual duty to pay premiums and then challenging the contracts' validity upon the occasion of Sun Life becoming required to discharge its contractual duty of paying a properly submitted death claim.

33.     Sun Life's conduct, as described herein, has caused existing harm to Securities Intermediary and the beneficial owner of the Policies by creating uncertainty in the secondary market regarding whether Sun Life will honor its obligations under its policies, thus diminishing the value and marketability of the Policies.  A declaration as to validity of the Policies could cure this harm to interests in the Policies.

34.     Securities Intermediary faces the untenable position, having paid millions of dollars to date, of having to pay possibly millions of dollars in additional premiums, only to have Sun Life deny payment of a death benefit on the Policies when a claim is made—and perhaps also to have

Sun Life demand retention of the premiums paid in support of the Policies, as it has done in past cases.  Securities Intermediary's only recourse, absent a declaration as to the validity of the Policies, is to stop paying premiums and to let the Policies lapse, thus losing its valuable assets, sustaining an enormous loss, and enabling Sun Life to retain unjustly the benefit of millions of dollars of premiums without having to pay any death benefit.

35.     Accordingly, there exists a bona fide, actual, and present practical need for a declaration regarding the validity of the Policies.

36.     Wherefore, Securities Intermediary requires a judicial declaration of the validity of the Policies and is entitled to a declaratory judgment that the Policies are valid, enforceable, and cannot be challenged based on insurable interest or any other basis (except for nonpayment of premiums).

## COUNT TWO (In the Alternative)
### (Equitable Estoppel)

37.     Securities Intermediary repeats and re-alleges the allegations contained in paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38.     Sun Life's communications and conduct, alleged herein, amount to false representations and concealment of material facts, calculated to convey the impression that Sun Life considers the Policies to be valid and that Sun Life intends to honor its obligations under the Policies to pay the death benefit.

39.     Sun Life made these communications and engaged in this conduct with the intention and the expectation that the resulting impression—that Sun Life considered the Policies valid and enforceable—would be relied upon by Securities Intermediary and the beneficial owner of the Policies in acquiring the Policies and making all of the premium payments for the Policies to keep the Policies in force.

40.     This reliance was justified, particularly given the many years that Sun Life readily and openly has accepted significant premium payments on the Policies, the fact that Sun Life has provided multiple verifications of coverage for the Policies and the fact that Sun Life expressly approved changes in the owner and beneficiary of the Policies.

41.     In reality, Sun Life's practice is to provide verifications of coverage on policies with characteristics similar to the Policies, inducing payment of millions of dollars of premiums, and then to deny the very coverage that it verified upon the event that is the very purpose of the coverage—submission of a death claim.

42.     Securities Intermediary and the beneficial owner of the Policies lacked knowledge, in paying substantial consideration to acquire and maintain the Policies, of Sun Life's practice of disavowing coverage upon receiving a death claim after having verified coverage and having collected years of premiums on policies with characteristics similar to the Policies.

43.     Consequently, Securities Intermediary and the beneficial owner of the Policies have spent millions of dollars acquiring the Policies and paying premiums to support the Policies.

44.     Securities Intermediary will suffer extreme prejudice if this Court denies Securities Intermediary's requested declaratory relief as to the validity of the Policies, unless Sun Life is ordered to pay Securities Intermediary the millions of dollars paid to acquire the Policies and to maintain the premiums on the Policies.

45.     Wherefore, Securities Intermediary is entitled to an order that Sun Life pay Securities Intermediary the amounts that Securities Intermediary and the beneficial owner of the Policies have paid to acquire the Policies and to maintain the premiums on the Policies.

## COUNT THREE (In the Alternative)
### (Unjust Enrichment)

46.     Securities Intermediary repeats and re-alleges the allegations contained in paragraphs 1 through 45 of this Complaint as if fully set forth herein

47.     If this Court denies Securities Intermediary's requested declaratory relief and holds the Policies are not valid contracts and that Sun Life is not obligated to pay death benefits under the Policies, Sun Life will receive a windfall and be enriched by the amount of all premiums paid to support the Policies, plus income earned thereon, unless the Court orders Sun Life to return the total amount of those premiums to Securities Intermediary, plus interest.

48.     Securities Intermediary's acquisition of the Policies (including all rights thereunder) and payments of the premiums on the Policies were induced by Sun Life, through Sun Life's communications and conduct.

49.     Permitting Sun Life to retain any of the premium payments made in support of the Policies would be against equity and good conscience, and would reward Sun Life for its wrongful communications and conduct.

50.     Wherefore, Securities Intermediary is entitled to an order that Sun Life pay Securities Intermediary any and all premiums received by Sun Life that were paid to support the Policies, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Securities Intermediary prays that this Court enter judgment:

1.     Declaring the Policies valid, so long as contractually required premiums are paid, and declaring that the validity of the Policies and Sun Life's obligations to pay any ultimate death benefit cannot be challenged on the basis of any events or actions that have transpired to date, including, but not limited to, the procurement of the Policies, the payment of premiums to date or Securities Intermediary's acquisition of the Policies;

2.      In the event that this Court denies Securities Intermediary's request for declaratory relief, awarding Securities Intermediary any and all amounts that have been expended, as pled in Count II, or that Sun Life has received, as pled in Count III, in an amount to be determined at the time of such award, including pre-judgment and post-judgment interest at the maximum rate allowable by law;

3.      Awarding Securities Intermediary's costs of this action and reasonable counsel fees and costs;

4.      Awarding any other relief that this Court deems just and proper under the circumstances.

Dated:  June 14, 2021                                KATTEN MUCHIN ROSENMAN LLP


                                                    By: /s/   John Reale
                                                    John W. Reale (MA Bar No. 654645)
                                                    john.reale@katten.com
                                                    Nat Shapo (pro hac vice to be filed)
                                                    David J. Stagman (pro hac vice to be filed)
                                                    KATTEN MUCHIN ROSENMAN LLP
                                                    525 W. Monroe St.
                                                    Chicago, Illinois 60661
                                                    (312) 902-5200
                                                    *Attorneys for Plaintiff Wells Fargo National Association, as Securities Intermediary*